UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FILED
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY
04 AUG 12  AM 10: 31

THE HONORABLE ORDER OF )
KENTUCKY COLONELS, INC., )
)
PLAINTIFF, )
)
v. ) CIVIL ACTION NO. _3:04CV 465-H_
)
BUILDING CHAMPIONS, LLC, )
d/b/a KENTUCKY COLONELS )
BASKETBALL )
)
DEFENDANT. )

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

The Honorable Order of Kentucky Colonels, Inc., by counsel, in support

of its Motion for a Preliminary Injunction, states as follows:

### FACTS

The Honorable Order of the Kentucky Colonels, Inc is a non-profit

organization that distributes grants to needy organizations and educational institutions

[Verified Complaint, ¶ 1]. The organization formally dates back to October 14, 1930

[*Id.*]. During a meeting at the Brown Hotel in Louisville, groundwork was laid for a

group to be known as The Kentucky Colonels [*Id.*]. Governor Flem Sampson not only

endorsed the organization but defined it as he urged the purpose to be "a society

organization to restore the grandeur and sentiment of the original Kentucky Colonel; to

more closely bond together this group into a great non-political brotherhood for the

advancement of Kentucky and Kentuckians" [*Id.*]. These comments were made at the

first formal meeting of The Kentucky Colonels on May 23, 1931 [*Id.*]. From a historical

perspective, the phrases "Kentucky Colonel" and "Kentucky Colonels" would not exist

were it not for the honorary appointments by the Governor of the Commonwealth, and the promotional work of The Honorable Order of Kentucky Colonels [*Id.*].

The Honorable Order has used the KENTUCKY COLONELS mark since 1931 [Verified Complaint, ¶ 2].  In recent years, The Honorable Order has used the KENTUCKY COLONELS mark on a wide variety of merchandise [*Id.*].  The sale of this merchandise supports The Honorable Order's mission [*Id.*].  On March 10, 2003, The Honorable Order filed an application with the United States Patent and Trademark Office ("USPTO") to register the KENTUCKY COLONELS trademark in connection with numerous types of goods and merchandise [Verified Complaint, ¶ 10].  On February 10, 2004, the USPTO registered the KENTUCKY COLONELS trademark and assigned it the registration number 2,812,681 [*Id.*; *see* Exhibit A to Verified Complaint].

Defendant Building Champions, LLC ("Building Champions"), owner of the recently-formed American Basketball Association's new Louisville team, has decided to name the team the Kentucky Colonels.  Although the Kentucky Colonels team has yet to play a single game, Building Champions is already offering T-shirts, golf shirts, and caps bearing the KENTUCKY COLONELS mark for sale on its website, www.colonelsbasketball.com [*See* Exhibit B to Verified Complaint].  To stop this unfair competition, Plaintiff has brought this action pursuant to the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., to enjoin Defendant from violating Plaintiff's trademark, to recover damages, and to obtain an accounting of Defendant's profits associated with its unlawful behavior.

It is imperative that Defendant be enjoined from any further use of The Honorable Order's trademark, and that Defendant be ordered to deliver for destruction all

2

infringing materials.  Without such relief, Defendant will be able to further confuse the public by trading on the goodwill The Honorable Order has amassed in its trademark.  As Defendant enriches itself by using the trademark belonging to The Honorable Order, The Honorable Order's reputation and community relations with the public will be irreparably damaged.

As shown in the Verified Complaint and discussed below, (i) The Honorable Order is suffering real, immediate and irreparable harm from Defendant's infringement of its trademark; (ii) The Honorable Order has raised a substantial question as to the merits of its claims against Defendant; (iii) the balance of the equities favors the issuance of a restraining order against Defendant; and (iv) the issuance of a restraining order will not harm the public interest.  For these reasons, The Honorable Order respectfully requests that this Court enter a temporary restraining order and a preliminary injunction.

## ARGUMENT

In considering whether to grant the injunctions The Honorable Order seeks, this Court is to balance the following factors, none of which is singularly dispositive:  (1) Plaintiff's likelihood of success on the merits; (2) the threat of irreparable harm posed by Defendant's continued conduct; (3) the potential harm that the relief could cause to Defendant; and (4) whether it is in the interest of the public to order such relief.  *See, e.g., Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998)(preliminary injunction); *Blue Cross & Blue Shield Mutual of Ohio v. Blue Cross and Blue Shield Assoc.*, 110 F.3d 318, 322 (6th Cir. 1997)(preliminary injunction); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996)(temporary restraining order); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th

Cir. 1985)(preliminary injunction); *Milliron v. Louisville and Jefferson County Metropolitan Sewer District*, 867 F.Supp. 559, 563 (W.D. Ky. 1994)(preliminary injunction); *Kayrouz v. Ashcroft*, 261 F.Supp.2d 760, 763 (E.D. Ky. 2003)(temporary restraining order).  Applying each of these factors to the present case demonstrates that The Honorable Order's request for injunctive relief should be granted.

### A.   THE HONORABLE ORDER IS LIKELY TO SUCCEED ON THE MERITS.

"The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.  Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*, 755 F.2d at 1229.  The Honorable Order's complaint alleges that Defendant has infringed its KENTUCKY COLONELS trademark.  The Honorable Order is likely to succeed on the merits on its claims for trademark infringement and therefore is entitled to the injunctive relief it seeks against Defendant.

The Lanham Act specifically provides for injunctive relief to prevent the violation of any right of a trademark holder. *See* 15 U.S.C. § 1116.  The Honorable Order's trademark registration is prima facie evidence of the validity of its mark. *See* 15 U.S.C. § 1115.  "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion amount consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

The Sixth Circuit weighs several factors to determine whether a likelihood of confusion exists:  (1) the strength of the plaintiff's mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5)

the marketing channels used; (6) the likely degree of purchaser care; (7) the intent of the defendant in selecting the mark; and (8) the likelihood of expansion of the product lines. *PACCAR, Inc. v. Telescan Technologies, LLC*, 319 F.3d 243, 249-50 (6th Cir. 2003); *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), *cert. denied*, 459 U.S. 916 (1982). These factors are a guide, and it is not necessary for a court to apply these factors with mathematical precision. *See Daddy's Junky Music Stores*, 109 F.3d at 280.

The likelihood that consumers will confuse the Defendant's use of The Honorable Order's trademark as being authorized or endorsed by The Honorable Order is extremely high, primarily due to the strength of The Honorable Order's mark. "The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct the mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Daddy's Junky Music Stores*, 109 F.3d at 280 (citations omitted). When assessing the strength of a trademark, the Court must categorize the mark as either generic, descriptive, suggestive, or fanciful/arbitrary. *Id.* Fanciful or arbitrary marks are the strongest and most distinctive. *Id.*

In the present case, the KENTUCKY COLONELS trademark is inherently strong and distinctive; it is an arbitrary phrase that has no meaning independent of the societal organization organized for the advancement of Kentucky. The Honorable Order has used the KENTUCKY COLONELS mark since 1931 [Verified Complaint, ¶ 1]. For this reason, the KENTUCKY COLONELS mark is inextricably intertwined with The Honorable Order, and any use by Defendant of this mark will inevitably cause confusion and create the mistaken impression that The Honorable Order is associated or affiliated

with Defendant's basketball team and exhibitions.   Moreover, the strength of The Honorable Order's mark is enhanced by the fact that there is no evidence of any other similar marks actively being used in commerce. *See Daddy's Junky Music Stores*, 109 F.3d at 281.

Other factors also weigh heavily in favor of The Honorable Order.  For example, the relatedness of the goods strongly supports the injunctions requested by the Plaintiff.  "Services and goods 'are related not because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Daddy's Junky Music Stores*, 109 F.3d at 282-83 (citing *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir. 1991)).  Here, The Honorable Order sells a variety of merchandise bearing the KENTUCKY COLONELS mark to support its charitable grants, including jewelry, sweatshirts, T-shirts, money clips, glasses, multi-purpose cloth bags, jackets, caps, lapel pins, umbrellas, golf balls, chairs, and numerous other items.  Although the goods being sold by Defendant on its website bearing the KENTUCKY COLONELS mark are currently limited to T-shirts, golf shirts and caps it is undeniable that Defendant will wish to expand its sales to a wide variety of promotional goods in the future.  Unfortunately, it is likely that the sales of such goods at Defendant's basketball exhibitions would easily be confused by the public as being supported or affiliated with The Honorable Order, who sells such merchandise to support its worthy causes.

In addition, the similarity of the marks favors The Honorable Order's requested relief, as the mark currently being used by the Defendant is virtually identical to the mark registered by The Honorable Order. Although there is not yet evidence of actual consumer confusion, a lack of such evidence is "rarely significant" due to the difficulty of securing such evidence. *Daddy's Junky Music Stores*, 109 F.3d at 284. The marketing channels of the parties are and will be very similar: Both parties are selling merchandise bearing the KENTUCKY COLONELS mark over the internet, and the target consumers will be primarily the citizens of Kentucky.

The final three factors also support The Honorable Order. When assessing the degree of care with which consumers will likely purchase the parties' goods or services, the court should consider the buyers' expertise with respect to the products at issue, as well as the expense of the product. *Daddy's Junky Music Stores*, 109 F.3d at 285. "[W]hen services are expensive or unusual, the buyer can be expected to exercise a greater care in her purchases." *Id.* In the present case, the majority of the items sold by The Honorable Order, as well as the items which the Defendant will likely wish to sell at its basketball exhibitions, are relatively inexpensive items such as shirts, caps, glasses, and jackets. Under such circumstances, it is predictable that the degree of care exercised by consumers purchasing these products would be low.

The intent of the defendant is also assessed when determining the likelihood of consumer confusion. "Direct evidence of intentional copying is not necessary to prove intent. Rather, the use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying." *Daddy's Junky Music Stores*, 109 F.3d at 286 (citation omitted). Based upon prior correspondence

between counsel in this case, Defendant knew of The Honorable Order's trademark before it began using the mark in connection with its merchandise.

Finally, it is almost a certainty that if Defendant's basketball team enjoys any success whatsoever, it will undoubtedly wish to expand its product lines. Whether college or pro, basketball teams across the nation heavily merchandise a wide variety of products bearing their team's names. The new "Kentucky Colonels" team is already marketing and selling T-shirts, golf shirts and caps bearing the KENTUCKY COLONELS mark on its internet website, and the team has yet to play its first game. If Defendant is not enjoined from infringing on The Honorable Order's mark, Defendant will inevitably pursue the sale of additional merchandise bearing the KENTUCKY COLONELS mark, such as cups, bags, jackets, glasses, and jewelry. In fact, Defendant has recently publicly expressed its intention to operate a gift shop in the venue it plans to lease for its home games [*See* Louisville Courier-Journal article, *ABA Team Likely to Play at Gardens*, August 2, 2004, attached hereto as Exhibit A]. Unfortunately for Defendant, the trademark issued to The Honorable Order covers these exact items.

Certainly, The Honorable Order has a strong likelihood of success on the merits in its claim of trademark infringement. To prevent irreparable injury and maintain the status quo, the temporary restraining order and preliminary injunction requested by The Honorable Order should be granted.

## B. DEFENDANT'S CONTINUED INFRINGE-MENT OF THE TRADEMARK OF THE HONORABLE ORDER POSES A THREAT OF <u>IRREPARABLE HARM</u>.

In the trademark context, the requirement of irreparable injury is to be interpreted liberally. The Sixth Circuit has recognized that in an infringement action, "'a

finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears.'" *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (internal citation omitted). *See also Circuit City Stores, Inc. v. Carmax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). "The irreparable injury flows 'both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values.'" *Id.* (citation omitted).

Defendant's use of The Honorable Order's trademark poses a certain and immediate threat of irreparable injury to the reputation and goodwill of The Honorable Order. The injury to The Honorable Order's goodwill and other charitable interests caused by this conduct will only increase as Defendant's activities continue. Indeed, it is likely that The Honorable Order's merchandise sales which support numerous charities would be irreparably harmed if Defendant is permitted to continue selling merchandise bearing the KENTUCKY COLONELS mark.[1] Moreover, unless Defendant is enjoined from infringing the Honorable Order's mark, it will be difficult to subsequently quantify how many sales it lost due to Defendant's actions. *See, eg., Budish v. Gordon*, 784 F. Supp. 1320, 1337 (N.D. Ohio 1992). In addition, The Honorable Order has already entered into discussions with third parties regarding the potential licensing of the KENTUCKY COLONELS mark. These negotiations, which could result in substantial sums of money for The Honorable Order, would be irreparably jeopardized if Defendant's infringing activities are allowed to continue.

---

[1] The merchandise sales which support The Honorable Order's charitable interests are conducted by Kentucky Colonels Collectibles, Inc. a wholly-owned subsidiary of The Honorable Order of Kentucky Colonels, Inc. The profits from such sales are then donated to The Honorable Order's general charitable fund to be distributed via its numerous grants.

The injury which will be sustained by The Honorable Order is more than financial, however. The Honorable Order has spent many years developing its reputation and goodwill in the community. Here, continued use of its mark by Defendant could cause The Honorable Order to suffer a substantial loss of goodwill among its members and the general public, as consumers are confused into thinking that The Honorable Order is acting in concert with Building Champions and/or the American Basketball Association. The threat that the goodwill and reputation of The Honorable Order will be diminished and the prestige and honor associated with The Honorable Order's trademark tarnished is an injury which cannot be rectified monetarily. The injury is immediate and continuing and cannot be repaired. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (holding that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute"); *Michigan Bell Telephone Co.*, 257 F.3d 587, 599 (6th Cir. 2001) (noting same); *Genny's Diner & Pub, Inc. v. Sweet Daddy's, Inc.*, 812 F.Supp. 744, 747 (W.D. Ky. 1993) (finding that where confusion is highly likely, the loss of goodwill is irreparable or, at best, only very slowly regained, and noting that damages for such harm are clearly inadequate).

The Honorable Order has sufficiently demonstrated the irreparable harm which it will suffer if the injunctive relief being sought is not granted. The motion for a temporary restraining order and a preliminary injunction should be granted.

## C.   THE BALANCE OF INJURIES WEIGHS DECIDEDLY IN PLAINTIFF'S FAVOR.

The relief requested by The Honorable Order prohibits Defendant from doing what it should not be doing in the first place -- using a trademark to which it has no

legal right.  The injunctions sought by The Honorable Order would not inflict any harm on any legitimate aspect of Defendant's business.  Defendant's current merchandise violates the rights of The Honorable Order, and thus any negligible effect the injunctions may have on Defendant's merchandising efforts should be of no consequence whatsoever in this Court's decision:  "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Budish v. Gorden*, 784 F.Supp. 1320, 1338 (N.D. Ohio 1992) (citations omitted). *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 253 F.Supp.2d 943, 973 (E.D. Ky. 2003)("One cannot build a business based upon infringing another's intellectual property rights, and then be allowed to complain that making them stop will cause harm").  Furthermore, when a plaintiff has made a substantial investment of time and money in its mark as opposed to the investment by the infringer, the balance of hardships tips in the plaintiff's favor. *See Woodroast Sys., Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906, 919 (D. Minn. 1992), *aff'd* 994 F.2d 844 (8th Cir. 1993).

The Honorable Order has invested 73 years in developing the goodwill behind it KENTUCKY COLONELS trademark.  Defendant is using The Honorable Order's trademark to lend authenticity and reputability to its relatively new basketball team and exhibitions.  Defendant has **no** right to do business infringing upon the intellectual property of The Honorable Order. The Honorable Order is entitled to protection from this infringement and dilution of its mark.

Moreover, Defendant's basketball team is in its very early stages.  The Louisville team has yet to play a single basketball game.  In fact, the team has only

11

recently been formed [*see* page from Defendant's website indicating try-outs began July 31, 2004, Exhibit B hereto]. Refraining from selling team merchandise at this early juncture will impose little, if any, hardship on Defendant.

Accordingly, as the only potential injury to Defendant would be profits lost from their infringing activities, the balance of equities lies heavily in favor of The Honorable Order. The motion for injunctive relief should be granted.

### D.   GRANTING INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST.

The injunctive relief sought by The Honorable Order is clearly in the best interest of the public. In the trademark context, courts balance the interest in protecting the public from confusion with the interest in a competitive marketplace. *See Woodroast Sys., Inc.*, 793 F.Supp. at 919. In the present case, it is certainly in the public interest to prevent confusion between the products sold by The Honorable Order and similar products sold by others improperly using the KENTUCKY COLONELS mark.

The Honorable Order is a non-profit organization that distributes grants to needy organizations and educational institutions. To raise money for charity, The Honorable Order solicits contributions from appointed Kentucky Colonels, holds an annual barbeque picnic, and sells a wide variety of merchandise that bears the KENTUCKY COLONELS trademark. On an annual basis, the Honorable Order raises and distributes more than one million dollars to charitable and educational organizations across the state. Any confusion which could impair The Honorable Order's efforts to raise money for the worthy causes to which it contributes is not in the best interest of the public welfare. The Honorable Order's motion for a temporary restraining order and a preliminary injunction is in the public interest and should be granted.

## CONCLUSION

The Honorable Order of Kentucky Colonels, Inc. is suffering irreparable injury from Defendant's infringement of its trademark. The Honorable Order respectfully requests that its motion for a temporary restraining order and a preliminary injunction be granted and that the proposed Orders be entered with all possible haste.

Respectfully submitted,

Steven L. Snyder
Roxanne Baus Edling
WYATT, TARRANT & COMBS, LLP
PNC Plaza
500 West Jefferson Street, Suite 2600
Louisville, KY  40202-2898
502.589.5235

*Counsel for Plaintiff, The Honorable Order of Kentucky Colonels, Inc.*

20227260.1

13