



FILED
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY
04 AUG 20 PM 3: 00

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | ) | |
| KENTUCKY COLONELS, INC. | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. 3:04CV-465-H |
| | ) | |
| BUILDING CHAMPIONS, LLC, | ) | |
| d/b/a KENTUCKY COLONELS | ) | |
| BASKETBALL | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Building Champions, LLC, by counsel, in support of its Opposition to Plaintiff's

Motion for Preliminary Injunction respectfully submits the attached Memorandum.

Respectfully submitted,

*Stephanie A. Hale*

Michelle Kaiser Bray
Stephanie A. Hale (Ky. Bar #87929)
SOMMER BARNARD ATTORNEYS, PC
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204

and

Amy B. Berge
Holland McTyeire
Greenebaum Doll & McDonald PLLC
3500 National City Tower
Louisville, KY 40202

*Counsel for Defendant*

## STATEMENT OF POINTS AND AUTHORITY

I.     Introduction.................................................................................................1

II.    Counterstatement of Facts........................................................................4

III.   Argument ....................................................................................................7

- *Michigan Bell Telephone Company v. Engler*, 257 F.3d 587 (6th Cir. 2001).
- *Milliron v. Louisville & Jefferson County Metropolitan Sewer District*, 867 F.Supp. 559 (W.D. Ky. 1994).
- *Big Time Worldwide Concert & Sport Club at Town Center v. Marriott International*, 236 F.Supp. 2d. 791 (E.D. Mich. 2003); citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

A. The Honorable Order is Not Likely to Succeed on the Merits ..........................8

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).

1. Strength of Plaintiff's Mark ......................................................................9

- *Homeowner's Group v. Home Marketing Specialists*, 931 F.2d 1100 (6th Cir. 1991).

a.   Plaintiff's House Mark Incorporates "KENTUCKY COLONELS" as a Generic Term  ............................................10

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).
- *Nartron Corporation v. Stmicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002).

b. Numerous Uses of the Mark ......................................................13

- *Homeowner's Group v. Home Marketing Specialists*, 931 F.2d 1100 (6th Cir. 1991).
- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).

c. Secondary Source......................................................................15

- TMEP §1202.03(c).
- *In re Paramount Pictures Corp.*, 213 U.S.P.Q. 1111 (TTAB 1982).
- *In re Olin Corp.*, 181 U.S.P.Q. 182 (TTAB 1973).

- *CBS, Inc. v. David Liederman and William Liederman*, 866 F. Supp. 763 (S.D. N.Y. 1994).

d. Scope of Registration ..................................................................18

- *Harlem Wizards Entertainment Basketball v. NBA Properties*, 952 F. Supp. 1084 (N.J. 1997).

2. Relatedness of Goods..........................................................................22

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).

3. Similarity of the Marks ........................................................................23

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).
- *Wynn Oil Company v. American Way Service Corporation*, 943 F.2d 595 (6th Cir. 1991).
- *Harlem Wizards Entertainment Basketball v. NBA Properties*, 952 F. Supp. 1084 (N.J. 1997).

4. Evidence of Actual Confusion...............................................................25

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).

5. Marketing Channels.............................................................................25

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).
- *Homeowner's Group v. Home Marketing Specialists*, 931 F.2d 1100 (6th Cir. 1991).

6. Likely Degree of Purchaser Care..........................................................27

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).
- *Harlem Wizards Entertainment Basketball v. NBA Properties*, 952 F. Supp. 1084 (N.J. 1997).

7. Defendant's Intention in Selecting the Mark ........................................28

- *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).

       8.  Likelihood of Confusion .......................................................................29

          •  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).

  B.  There is No Threat of Irreparable Harm..........................................................30

       •  *Wynn Oil Company v. American Way Service Corporation*, 943 F.2d 595 (6th Cir. 1991).
       •  *Programmed Tax Systems v. Raytheon Co.*, 419 F.Supp. 1251 (S.D. N.Y. 1976).

  C.  Issuance of a Preliminary Injunction Would Cause Substantial Harm to Defendant and Others .....................................................................................31

  D.  Granting Injunctive Relief is Not in the Public Interest....................................34

       •  *Big Time Worldwide Concert & Sport Club at Town Center v. Marriott International*, 236 F.Supp. 2d. 791 (E.D. Mich. 2003)
       •  *Woodroast Systems, Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906 (D. Minn. 1992).

IV.    Conclusion ...............................................................................................34

V.    Certificate of Service ...............................................................................36

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. | ) ) ) | |
| PLAINTIFF, | ) ) | |
| V. | ) ) | CIVIL ACTION NO. 3:04CV-465-H |
| BUILDING CHAMPIONS, LLC, d/b/a KENTUCKY COLONELS BASKETBALL | ) ) ) ) | |
| DEFENDANT. | ) ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Building Champions, LLC ("Building Champions"), by counsel, in support of its

Opposition to Plaintiff's Motion for Preliminary Injunction, states as follows:

## INTRODUCTION

Plaintiff, the Honorable Order of Kentucky Colonels, Inc. (the "Honorable

Order") has asked the Court, through an asserted emergency of its own making, to grant

the extraordinary remedy of preliminary injunctive relief to stop Building Champions

from using its own KENTUCKY COLONELS service mark in connection with the sale

of fan merchandise relating to its basketball team. Plaintiff attempts to convince the court

that it is the sole keeper of the "Kentucky Colonels" term even though use of the

"Kentucky Colonels" term pre-dates the Honorable Order by over 100 years, and even

though many other entities have adopted and used, and continue to use, the term in

connection with various products and services.  Plaintiff claims exclusive ownership of

"Kentucky Colonels" even though it is the Governor in the name of the great

Commonwealth - not the Honorable Order - who is the senior user of the term and the

original source associated with the term. The term "Kentucky Colonels" as it relates to

colonels from Kentucky (whether real or honorary) is as much a part of Kentucky as the

lightning speed of its thoroughbreds and the morning dew that blesses the bluegrass.

   The term "Kentucky Colonels" as it relates generically to an individual who is a

Kentucky colonel is in the public domain. As such, no one - not even the Honorable

Order - can adopt for itself exclusive rights to commercialize the term.  Since 1957, the

Honorable Order has nobly used the generic term as part of its own service mark,

"HONORABLE ORDER OF KENTUCKY COLONELS" to foster the advancement of

Kentucky and the spirit of its people.  Over the years, the Honorable Order has earned

substantial and well-deserved goodwill in the association of its name with the charitable

services that it provides.  However, the Honorable Order cannot take for itself goodwill in

the "Kentucky Colonels" element of its name because that belongs to the Commonwealth

of Kentucky.  It is without question that the Honorable Order was formed, and exists

today, for the very purpose of honoring and promoting Kentucky's finest - its colonels.

   Undeterred, Plaintiff argues that its 2004 Class 25 trademark registration for

KENTUCKY COLONELS for certain clothing and other novelty items is enough to stop

Building Champions from selling its own basketball-related items for the same kind of

merchandise.  Plaintiff is wrong.  By its own admission, the merchandise sold by the

Honorable Order relates directly back to its charitable services.  Consumers are buying

these products because they want to support the mission of the Honorable Order.  The

ornamental use of the KENTUCKY COLONELS term on novelty merchandise creates a

2

secondary source association in the mind of the public.  The association between the

Honorable Order's use of KENTUCKY COLONELS for its charitable services and its

use of KENTUCKY COLONELS on novelty merchandise that supports the services is

the same to the public.  But for the work of the organization, consumers would not

purchase the item.  If the Honorable Order had a protectible trademark interest in its

primary use of the KENTUCKY COLONELS term, it would also have a valid,

protectible interest in the secondary use of the term on the novelty items set forth in its

registration.  However, because the term is generic as used by the Honorable Order, its

Class 25 trademark registration is arguably invalid.

Plaintiffs have already conceded that Building Champions is free to continue to

use KENTUCKY COLONELS as a service mark for its basketball team.  Plaintiff has

acknowledged, as it must, that there is no likelihood of confusion between the use of

KENTUCKY COLONELS in connection with basketball services and the use of

KENTUCKY COLONELS in connection with unrelated charitable endeavors.  It is

nonsensical for Plaintiff to claim that the use of the same term on team merchandise is

somehow confusing.  This is a particularly ridiculous argument where Building

Champions' use of the KENTUCKY COLONELS mark on merchandise combines the

term with the red, white and blue design of a basketball!  Just as the Honorable Order

makes secondary use of its core mark on related merchandise, so does Building

Champions.  If there is no confusion between the two house marks, and there isn't, then

there can be no confusion where the secondary uses of the marks clearly relate back to

the original source.  Plaintiff will not succeed on the merits of its trademark infringement

claim.  As such, Plaintiff's motion for preliminary relief on these claims must be denied.

3

## COUNTERSTATEMENT OF FACTS

1.      In 1812, the first Governor of the Commonwealth of Kentucky, Isaac Shelby, appointed his son-in-law, Charles S. Todd, the first Kentucky Colonel. [*See* Exhibit A].

2.      In May 1931, the Honorable Order of the Kentucky Colonels was founded.  [*See* Verified Complaint, ¶ 2].

3.      On or about June 10, 1957, the Honorable Order of Kentucky Colonels, Inc. was incorporated as a non-profit entity in the Commonwealth of Kentucky.  [*See* Exhibit B].

4.      On or about February 8, 1983, the Honorable Order received U.S. trademark Registration No. 1,227,024 for the mark HONORABLE ORDER OF KENTUCKY COLONELS in connection with eleemosynary services – namely, founding scholarship, equipping playgrounds and the like and to collect historical and cultural material pertaining to the Commonwealth of Kentucky.  [*See* Exhibit C].

5.      The HONORABLE ORDER OF KENTUCKY COLONELS mark has a date of first use in commerce of May 10, 1957.  [*See* Exhibit C].

6.      On or about September 14, 1987, Kentucky Colonels Collectibles, Inc. was incorporated in the Commonwealth of Kentucky.  [*See* Exhibit D].

7.      Kentucky Colonels Collectibles, Inc. is the entity which conducts the merchandising efforts of the Honorable Order.  [*See* Plaintiff's Memorandum, Footnote 1, page 9].

8.      On or about February 10, 2004, the Honorable Order received U.S. trademark Registration No. 2,812,681 for the mark KENTUCKY COLONELS in

4

connection with (i) metal key chains; metal money clips; commemorative metal license plates; (ii) necklaces; rings being jewelry; ornamental lapel pins; cuff-links; tie-clips; (iii) coffee cups; dinking glasses; shot glasses; drinking flasks; (iv) multi-purpose cloth bags; (v) clothing, namely shirts, T-shirts, sweat shirts, jackets, vests, baseball caps, sun visors; and (vi) embroidered patches for clothing.  [*See* Exhibit E].

9.      The KENTUCKY COLONELS mark has as a date of first use of October 21, 2002 for each class of goods specified in U.S. Registration No. 2,812,681.  [*See* Exhibit E].

10.      On or about February 5, 2004, Stephanie Roach announced a "Name the Team" contest for the new ABA basketball team to be headquartered in Louisville.  [*See* Exhibit F].

11.      On or about March 19, 2004, Building Champions, LLC was organized in the State of Indiana.  [*See* Exhibit G].

12.      On or about April 9, 2004, Building Champions became qualified to do business in the Commonwealth of Kentucky.  [*See* Exhibit H].

13.      On or about April 9, 2004, Building Champions announced that the basketball team name would be the "Kentucky Colonels."  [*See* Exhibit I].

14.      On or about April 20, 2004, Building Champions received notification from the Honorable Order congratulating the company on plans to revive the ABA and locate a team in Louisville and seeking an accommodation with respect to the use by Building Champions of the KENTUCKY COLONELS mark on certain merchandise. [*See* Exhibit J].

15.     On or about May 3, 2004, Building Champions, through counsel, advised the Honorable Order that while there was no likelihood of confusion in Building Champions' use of the KENTUCKY COLONELS mark, Building Champions was willing to accommodate the Honorable Order by always using the word "basketball" or a basketball design in connection with its mark.  [*See* Exhibit K].

16.     On or about June 2, 2004, the Honorable Order, by counsel, notified Building Champions that there "are no other organizations using the KENTUCKY COLONELS of which [it] was aware" and that the Honorable Order had "exclusive use" of the KENTUCKY COLONELS mark.  [*See* Exhibit L].

17.     On or about June 17, 2004, Building Champions, by counsel, notified the Honorable Order of several other concurrent uses of the KENTUCKY COLONELS mark and the generic nature of the term.  [*See* Exhibit M].

18.     Despite its belief that there is no likelihood of confusion between Building Champions' KENTUCKY COLONELS mark and the Honorable Order's registered KENTUCKY COLONELS mark, Building Champions offered to resolve the matter amicably by using the term "basketball" or an image of a basketball in connection with its KENTUCKY COLONELS mark in connection with merchandise specified in the description of goods for U.S. Registration 2,812,681.  [*See* Exhibit M].

19.     After June 2004, Building Champions received no further correspondence or contact from the Honorable Order regarding this matter and accordingly, Building Champions believed this matter to be resolved.

6

20.     On or about August 12, 2004, Building Champions was notified that the Honorable Order had filed suit against it for alleged trademark infringement and was seeking a temporary restraining order and a preliminary injunction.  [*See* Exhibit N].

## ARGUMENT

The Court must consider four factors in determining whether or not to issue a preliminary injunction:  (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *Michigan Bell Telephone Company v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001).  These factors, "are not prerequisites that must be satisfied; rather, they are considerations to be balanced that guide the discretion of the court." *Milliron v. Louisville & Jefferson County Metropolitan Sewer District*, 867 F.Supp. 559, 563 (W.D. Ky. 1994).  Further, "a preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Big Time Worldwide Concert & Sport Club at Town Center v. Marriott International*, 236 F.Supp. 2d. 791 (E.D. Mich. 2003); citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

In applying each of these factors to the present case, Plaintiff's lack of any right to relief is so clear that the only result must be that Plaintiff's motion for injunctive relief be denied.