### A. THE HONORABLE ORDER IS <u>NOT</u> LIKELY TO SUCCEED ON THE MERITS

Plaintiff, the Honorable Order, alleges that Building Champions' use of its stylized mark KENTUCKY COLONELS and Basketball Design ("KENTUCKY COLONELS (stylized)") infringes upon Plaintiff's registered mark KENTUCKY COLONELS. First, to address Plaintiff's claims of trademark infringement against Building Champions, the Court must determine whether or not Plaintiff has a valid protectible trademark interest. Plaintiff owns U.S. Registration No. 1,227,024 for the mark HONORABLE ORDER OF KENTUCKY COLONELS in connection with eleemosynary services – namely, founding scholarship, equipping playgrounds and the like and to collect historical and cultural material pertaining to the Commonwealth of Kentucky. The mark has a date of first use in commerce of May 10, 1957. Building Champions acknowledges that Plaintiff has a valid registration for the mark HONORABLE ORDER OF KENTUCKY COLONELS as a whole. However, the KENTUCKY COLONELS element of this mark is not protectible apart from the mark as a whole because the term as used is generic.

Plaintiff also owns U.S. Registration No. 2,812,681 for the mark KENTUCKY COLONELS in connection with various novelty items including, but not limited to, clothing, namely, t-shirts, sweat shirts, jackets, vests, baseball caps and sun visors. The mark has a date of first use of October 21, 2002. In connection with this registration, the Honorable Order has disclaimed exclusive right to use the term "KENTUCKY" apart from the mark as a whole. The phrase "COLONELS" is not distinctive, especially in regard to uses in the Commonwealth of Kentucky. While Plaintiff's registration of the

8

mark KENTUCKY COLONELS is prima facie evidence of the validity of such mark, such evidence is rebuttable and the registration itself is still contestable.

Even if registration of the KENTUCKY COLONELS mark is valid, the analysis does not end there. To prevail on its trademark infringement claims, Plaintiff must prove that the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

The Sixth Circuit has identified the following eight factors which must be examined and weighed to determine a likelihood of confusion: (1) strength of Plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of Defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Daddy's Junky Music Stores*, 109 F.3d at 280. While these factors need not be applied with mathematical precision, "a thorough and analytical treatment must nevertheless be attempted." *Daddy's Junky Music Stores*, 109 F.3d at 280.

Based upon an analysis of the Sixth Circuit factors, its is clear that there are insufficient grounds upon which to base a determination that there exists a likelihood of confusion between the Honorable Order's registered trademark KENTUCKY COLONELS and Building Champions' use of the KENTUCKY COLONELS (stylized) mark.

1. Strength of Plaintiff's Mark

The Sixth Circuit has noted that the "strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace." *Homeowner's*

9

*Group v. Home Marketing Specialists*, 931 F.2d 1100, 1107 (6th Cir. 1991). Plaintiff's mark is not distinctive and any recognition of the mark appears to be limited to a narrow universe.

        a. Plaintiff's House Mark Incorporates "KENTUCKY COLONELS" as a Generic Term.

"When assessing its strength, a court will place a trademark into one of four categories: generic, descriptive, suggestive, and fanciful." *Daddy's Junky Music Stores*, 109 F.3d at 280. The phrase "KENTUCKY COLONELS," as used by the Honorable Order is not a trademark at all. The HONORABLE ORDER OF KENTUCKY COLONELS mark merely incorporates "KENTUCKY COLONELS" as a generic term. "A generic term can never function as a trademark." *Nartron Corporation v. Stmicroelectronics, Inc.*, 305 F.3d 397, 404 (6th Cir. 2002). "If a mark's primary significance is to describe a type of product rather than the producer, it is generic and is not a valid trademark." *Id.* In this instance, the element "KENTUCKY COLONELS" describes a type of person, i.e., a colonel. Therefore, the phrase "KENTUCKY COLONELS" is generic.

Evidence of a term being generic can be evidenced by "dictionary definitions, newspapers and other publications, generic use by competitors, generic use of the term by the mark's owners, and use of the term by third parties in trademark registrations." *Nartron Corp.*, 305 F.3d at 406. First, the term "KENTUCKY COLONEL" is a generic term because it refers to an individual who has been appointed by the Governor of the Commonwealth. Appointment of a "Kentucky Colonel" is not something that is sanctioned by the Honorable Order. [*See* Exhibit O] Even though an individual has been

10

given the honor of being named a Kentucky Colonel, that does not mean that such person is a member of the Honorable Order of Kentucky Colonels. A sitting Governor of the Commonwealth of Kentucky is the only one who can appoint a Kentucky Colonel. [*See* Exhibit O]. The Governor will generally appoint an individual upon: (a) nomination by an existing Colonel; (b) filing of the appropriate forms; and (c) payment of the appropriate fees.

The first "Kentucky Colonel" was appointed in 1812 with the first Governor of Kentucky, Isaac Shelby, who bestowed this honor on his son-in-law, Charles S. Todd. [*See* Exhibit A]. Throughout the history of the Commonwealth of Kentucky, Governors of the Commonwealth continued to appoint "Kentucky Colonels." These appointments occurred prior to and after the establishment of the Honorable Order. The Honorable Order, established in 1931, is an independent non-profit organization. The Honorable Order invites commissioned Kentucky Colonels to join its organization. [*See* Exhibit O]. Membership is open to all those commissioned, but one can be a "Kentucky Colonel" without becoming a member of the Honorable Order. The Honorable Order has no input in the selection of a Colonel, as such individuals are only commissioned by the Governor. [*See* Exhibit O].

Plaintiff itself admits that the term KENTUCKY COLONELS owes its existence to the Governor who appointed the first "Colonel" in the early 1800s [Verified Complaint, ¶ 2]. "From a historical perspective, the phrases 'KENTUCKY COLONEL' and 'KENTUCKY COLONELS' would not exist were it not for the honorary appointments made since the early 1800s by the Governors of the Commonwealth. . ." [*Id.*]. The original use of the term KENTUCKY COLONEL did not originate with the

11

Honorable Order but instead with the Governor. Thus, the term KENTUCKY COLONEL refers to many individuals who are not associated with or members of the Honorable Order. Therefore, the term KENTUCKY COLONEL is a generic term which has become a part of the public domain. For these reasons alone, Plaintiff's legal theory cannot be sustained.

As discussed in more detail below, the Honorable Order's use of the mark KENTUCKY COLONELS in connection with clothing is based upon the secondary source association with its prior registration for the mark HONORABLE ORDER OF KENTUCKY COLONELS. Throughout its Memorandum in support of its Motion, Plaintiff asserts that the goodwill associated with its mark KENTUCKY COLONELS dates back to the 1930's.[1] As a matter of illustration, page 11 of the Memorandum specifically states, "the Honorable Order has invested 73 years in developing the goodwill behind its KENTUCKY COLONELS trademark." By the Honorable Order's own admission, it relates the goodwill associated with its mark back to the date of formation of the Honorable Order.

Second, "assigning a category to a mark constitutes only a single step in determining the strength of the mark." *Daddy's Junky Music Stores*, 109 F.3d at 281. While the mark KENTUCKY COLONELS is generic as currently used by the Honorable Order, there are additional factors for the court to consider in connection with the strength of the mark.

---

[1] The reference of trademark use back to the 1930s is a bit confusing as the Honorable Order's registration for the HONORABLE ORDER OF KENTUCKY COLONELS cites a date of first use of 1957.

b. Numerous Uses of the Mark

The Sixth Circuit has recognized that, "the greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less the likelihood of confusion. Indeed, courts have found that extensive third-party uses of a trademark substantially weaken the strength of a mark." *Homeowner's Group*, 931 F.2d at 1108. In *Homeowners*, the Sixth Circuit found that a mark's lack of strength was indicated by "numerous third-party registrations of the mark . . . , either alone or in conjunction with other words or designs, in the U.S. Patent and Trademark Office and in various states." *Id.* Similarly, there are several other uses of the KENTUCKY COLONELS mark (and variations of same) which have been in use in different product and service categories both *prior to* and after the Honorable Order's trademark registration. Use of the mark KENTUCKY COLONELS actually pre-dates the establishment of the Honorable Order. Currently, there is an active trademark registration for the mark KENTUCKY COLONEL in connection with whiskey owned by Jim Beam Brands Co. [*See* Exhibit P]. This mark was first used in commerce in 1892. Jim Beam and its predecessors in interest have used the mark since 1892 (prior to use by the Honorable Order) and have owned a registration for the mark since 1934. Such registration was renewed (for a ten-year term) as recently as 1996. [*See* Exhibit P].

While there are *currently* no other live registrations for the mark KENTUCKY COLONELS, there were several applications registered by the U. S. Patent and Trademark Office ("USPTO") at the same time the Honorable Order owned its registration. For example, in 1964, Ed Stein obtained a registration for the mark KENTUCKY COLONEL in connection with barbeque sauce, which had a date of first

13

use of December 23, 1962. [*See* Exhibit Q]. In 1971, Kentucky Colonel Gasoline, Inc. obtained a registration for the mark KENTUCKY COLONEL in connection with gasoline service station services and car wash services. [*See* Exhibit R]. Further, in 1976, John Delgatto obtained a registration for the mark KENTUCKY COLONELS in connection with a rendition of bluegrass-country music by a vocal and instrumental group which had a date of first use of 1963 and an expiration date of November 4, 1992. [*See* Exhibit S]. Finally, in 1980, Phillip Morris obtained a registration for the mark KENTUCKY COLONEL in connection with cigarettes which had a date of first of use of November 6, 1978. [*See* Exhibit T]. While these registrations are no longer active, that does not mean that the marks are no longer in use. In addition, all of the above-referenced registrations were filed and obtained while the Honorable Order maintained its registration. Accordingly, the USPTO has a history of allowing the registration of the identical mark KENTUCKY COLONEL(S) for dissimilar goods and services. As was the case in *Homeowners*, these various registrations demonstrate the lack of strength in the mark KENTUCKY COLONELS.

Further, the Sixth Circuit has noted that "the more common a word or phrase is, the less inherent trademark strength it may have, even when the mark has an arbitrary relation to the good or service to which it applies." *Daddy's Junky Music Stores*, 109 F.3d at 281. There are several other concurrent uses of the term KENTUCKY COLONELS. The former Kentucky Colonels basketball team previously located in Louisville was a member of the American Basketball Association for all of the league's nine years of existence from 1967–1976. This time span also includes that period of time in which the Honorable Order was using KENTUCKY COLONELS in commerce.

There are several other current uses of the KENTUCKY COLONELS mark, from little league baseball teams to the bluegrass group "Kentucky Colonels," who just released a new album this past year. [*See* Exhibits U & V]. In addition, Eastern Kentucky University currently uses the mascot the COLONELS and sells t-shirts, hats and several other novelty items bearing the COLONELS mark. [See Exhibits W & X]. Thus, Plaintiff's position that "the strength of The Honorable Order's mark is enhanced by the fact that there is no evidence of any other similar marks actively being used in commerce" is patently untrue.

c. Secondary Source

The Honorable Order attempts to argue that these other uses of the mark KENTUCKY COLONELS do not involve the same type of goods as are covered by its Class 25 registration. However, with respect to determining a likelihood of confusion, such distinctions are not relevant. Further, the Honorable Order is not in the business of manufacturing t-shirts and other related apparel and novelty items. By its own admission, the Honorable Order is using the mark KENTUCKY COLONELS in connection with such items to, "support the Honorable Order's charitable interests." [*See* Plaintiff's Memorandum, Footnote 1, page 9].

The Honorable Order asserts that its Class 25 registration for KENTUCKY COLONELS for clothing and related novelty items is the hammer that will successfully prevent Building Champions from using any variation of KENTUCKY COLONELS in the same product categories. However, the Honorable Order's assertion must fail where both parties are making use of the KENTUCKY COLONELS term solely to refer to a secondary source. The use of the term KENTUCKY COLONELS on caps, for example,

15

in either case, is an ornamental use. [*See* Exhibit Y]. Notwithstanding such ornamental use, current trademark law allows ornamental matter which serves as an identifier of a secondary source to be registered on the Principal Register. *See* TMEP §1202.03(c). *See also In re Paramount Pictures Corp.*, 213 U.S.P.Q. 1111 (TTAB 1982) (MORK & MINDY mark held registrable for decals because applicant had an ongoing television series by that name and had previously registered MORK & MINDY for various products and services; primary significance of the term MORK & MINDY to a prospective purchaser of decals found to be the television series and the principal characters of the television series.) In fact, it is common knowledge that items such as caps and t-shirts are often ornamented with various terms and logos. "The 'ornamentation' of a T-shirt can be of a special nature which inherently tells the purchasing public the source of the T-shirt, not the source of the manufacture but the secondary source . . . ." *In re Olin Corp.*, 181 U.S.P.Q. 182 (TTAB 1973).

  Plaintiff has not, and cannot, demonstrate any use of the KENTUCKY COLONELS trademark in the novelty product categories that is disconnected from the primary meaning of the public domain term in its original context. In fact, the specimens of use submitted with the Honorable Order's 2004 Class 25 trademark application, together with the Honorable Order's current use of the "Kentucky Colonels" term on merchandise, clearly evidence the ornamental, secondary source function of the term. [*See* Exhibits Y and Z]. The Honorable Order has shown no evidence of trademark use of KENTUCKY COLONELS establishing a source of goodwill that is distinct from its primary services and/or attached solely to the novelty products. By its own admission, the merchandise sold by the Honorable Order relates directly back to its charitable

services. [Verified Complaint, ¶ 3]. The Honorable Order is clearly not in the business of manufacturing t-shirts and other related novelty items. The ornamental use of the KENTUCKY COLONELS term on novelty merchandise creates a secondary source association in the mind of the public. The association between the Honorable Order's use of KENTUCKY COLONELS for its charitable services and its use of KENTUCKY COLONELS on novelty merchandise that supports the services is the same to the public. But for the work of the organization, consumers would not purchase the item.

If the Honorable Order had a real trademark interest in its primary use of KENTUCKY COLONELS, it would also have a valid, protectible interest in the secondary use of the term on the novelty items set forth in its Class 25 registration. However, because the term is generic as used by the Honorable Order, its Class 25 trademark registration is invalid and subject to cancellation on this basis.

Plaintiff has already conceded that Building Champions is free to continue to use KENTUCKY COLONELS as a service mark for its basketball team. Plaintiff has acknowledged, as it must, that there is no likelihood of confusion between the use of KENTUCKY COLONELS in connection with basketball services and the use of KENTUCKY COLONELS in connection with unrelated charitable endeavors. Plaintiff literally misses the mark when it claims that the use of the same term on team merchandise is a confusing use, especially where Building Champions' use of the KENTUCKY COLONELS mark on merchandise combines the term with the red, white and blue design of a basketball. [*See* Exhibits AA and BB]. Just as the Honorable Order makes secondary use of its core mark on merchandise related to its charitable mission, Building Champions makes secondary use of its core mark on merchandise related to its

17

basketball team. If there is no confusion between the two house marks, and there is no confusion, then there can be no confusion where the secondary uses of the marks clearly relate back to their original sources. It is clear that two marks of identical terms by wholly unrelated owners can coexist in the same general market without a likelihood of confusion. For example, the mark "TELEVISION CITY" can be used by one owner in connection with the production of television shows and can be used by another owner in connection with restaurant services without confusion even where both parties sell T-shirts, posters and other related memorabilia bearing the mark. *See, generally, CBS, Inc. v. David Liederman and William Liederman*, 866 F. Supp. 763 (S.D. N.Y. 1994) (noting that, " . . . an analysis of the primary function of each party's business is more important." *Id*. at 769.)

d. Scope of Registration

Just because the Honorable Order owns a registration for the mark KENTUCKY COLONELS in connection with certain clothing and novelty items, it is not the *only* entity lawfully entitled to place the term KENTUCKY COLONELS on a t-shirt or related novelty items. As a matter of fact, the USPTO has granted many trademark registrations for virtually identical marks for t-shirts and related products. For example, currently, there are five sets of trademark registrations for virtually identical marks which pertain to t-shirts and related goods. [*See* Exhibit CC]. Please note that in each of these cases, the trademark owners disclaimed use of the particular city or state in connection with the mark, just as the Honorable Order disclaimed use of the term "KENTUCKY."