UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

04 AUG 20 PM 4: 24

| | | |
|---|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS | ) ) ) | |
| PLAINTIFF | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:04CV-465-H |
| BUILDING CHAMPIONS, LLC d/b/a/ KENTUCKY COLONELS BASKETBALL | ) ) ) | |
| DEFENDANT | | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**MOTION FOR INJUNCTIVE RELIEF**

This is a simple trademark infringement case which the Defendant has sought to complicate with a bouillabaisse of red herring. This memorandum addresses the major issues raised by Defendant at the August 13, 2004 conference, without the benefit of any writing filed by Defendant. The Honorable Order reserves the right to file a reply brief after Defendant files a response to The Honorable Order's motion for injunctive relief.

    I.    THE HONORABLE ORDER OWNS THE TRADEMARK
          "KENTUCKY COLONELS" FOR A WIDE VARIETY -
          OF MERCHANDISE.

Trademark rights in the United States arise from use. As the leading trademark commentator states "the first to use a designation as a mark in the sale of goods or services is the 'owner' and the 'senior user,'" *McCarthy on Trademarks* §16:4, and "[w]ith each sale of goods or services under such a business symbol, the seller builds

up greater and greater legal rights in that symbol," *McCarthy on Trademarks* §16:1.[1] As the Sixth Circuit has stated, "trademark law now pursues two related goals -- the prevention of deception and consumer confusion and, more fundamentally, the protection of property interests in trademarks." *Ameritech, Inc. v. American Information Technologies Corporation,* 811 F.2d 960, 964 (6th Cir. 1987).

The record demonstrates that The Honorable Order, in an effort to increase the funds available to it for charitable distribution, began using KENTUCKY COLONELS as a trademark for a wide variety of merchandise, at least as early as October 21, 2002.[2] Contrary to the assertion by Defendant, the first of its red herrings, The Honorable Order's use is not merely "ornamentation," or the affixation of a slogan or design with no trademark significance to the exterior of a product. The Honorable Order's mark is used both on the goods and on tags affixed to the goods, as shown on ***Exhibit A***, which identify the goods as KENTUCKY COLONELS brand merchandise.[3] The use of those tags, which are no different than the tags used for any other apparel brand, completely eliminate any claim that the mark is used merely as "ornamentation"

---

[1] Copies of the cited sections from treatises, Trademark Trial and Appeal Board decisions, and unpublished decisions herein are attached hereto collectively as Exhibit B. Plaintiff believes that the unpublished decisions cited herein have precedental value in relation to material issues involved in this case.

[2] Much earlier, it used HONORABLE ORDER OF KENTUCKY COLONELS, and a design, both for its charitable services and on goods, and it continues to use that mark as well.

[3] The fact that the goods may also bear labels designating their manufacturer is immaterial. As *McCarthy* states, "a product may ... have multiple marks owned by different firms.... [an] example of multiple mark and owner usage is a promotional item such as a T-shirt imprinted with both the mark of a university and the mark of the apparel manufacturer. *McCarthy, supra,* §7:8.

on goods or that the registration is subject to cancellation on that basis.[4] *In re Paramount Pictures Corp.*, 213 U.S.P.Q. 1111 (T.T.A.B. 1982), to which Defendant referred during the August 13, 2004 hearing, provides no authority to the contrary. In that decision, the Trademark Trial and Appeal Board determined that the mark MORK AND MINDY was registrable for decals because the mark was not mere ornamentation, but rather an indicator of source (ie, the television series). Such is the case here. The KENTUCKY COLONELS mark as used on The Honorable Order's merchandise clearly has a source-identifying function; it is not "mere ornamentation" such as, for example, the popular phrase "HAVE A NICE DAY." Moreover, The Honorable Order's mark has <u>already been registered</u>, which is prima facie evidence that it is not merely ornamental. 15 U.S.C.A. § 1115(a).

While The Honorable Order is pleased with the growth in the sale of its goods, totaling approximately $222,554.00 last year, it is the genuine use of the mark in commerce which affords The Honorable Order priority as a senior user. It is not necessary for The Honorable Order to show that the mark has become well-known or prominent, or that its profits from its goods are substantial. As the Sixth Circuit has observed, "As long as there is a genuine use of the mark in commerce, however,

---

[4] The claim would have little merit in any event, as *McCarthy* states:

> The PTO [United States Patent and Trademark Office] permits the registration of a mark as used on promotional goods if a service company (or a producer of goods) puts its mark on promotional items to be used by recipients, such as ball point pens and wearing apparel. In such instances, the mark can be registered for such promotional goods.

*McCarthy, supra*, §24:9:1.

ownership may be established even if the first uses are not extensive and do not result in deep market penetration or widespread recognition." *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.,* 146 F.3d 350, 358 (6th Cir. 1998). Any contention that The Honorable Order's growing sale of merchandise is too insignificant to matter misunderstands the rights of a trademark owner. The Sixth Circuit has recognized the harm in a junior user saturating the market and overwhelming the senior user: "The result is that the senior user loses the value of the trademark---its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Ameritech, Inc., supra,* 811 F.2d at 964.

There is <u>no evidence</u> that at the time The Honorable Order began selling its goods, any other party had any rights in KENTUCKY COLONELS as a trademark for the type of merchandise which The Honorable Order sells under the mark. Uses for <u>unrelated</u> products and services, the Defendant's second red herring, are irrelevant: A trademark is not a "right in gross" which prevents all parties from using the mark on <u>unrelated</u> goods or services, where no confusion is likely. *See, e.g., University of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co.,* 703 F.2d 1372 (Fed. Cir. 1983) (no confusion between NOTRE DAME for university and for cheese). There is no obligation to "police" or stop uses which are not infringements. Abandoned uses, such as the "old" ABA Kentucky Colonels basketball team, are another red herring. Federal law presumes abandonment where a mark has not been used for three years, 15 U.S.C. § 1127, and the "old" ABA Colonels went out of business in 1976. As *McCarthy* states, "[o]nce held abandoned, a mark falls into the public domain and is free for all to use.... Once

abandoned, a mark may be seized immediately and the person so doing so may build up rights against the whole world." *McCarthy on Trademarks* §17:1 and 17:2.

Even if it did not hold rights in KENTUCKY COLONELS for merchandise based on its earlier uses, The Honorable Order unquestionably began building up rights in KENTUCKY COLONELS for a wide variety of merchandise at least as early as October 21, 2002. The United States Patent and Trademark Office recognized those rights when it registered the mark. [*See* Exhibit A to Verified Complaint]. That registration is prima facie evidence of the validity of the registered mark, of the registration of the mark, of The Honorable Order's ownership of the mark, and of The Honorable Order's <u>exclusive</u> right to use KENTUCKY COLONELS for the goods for which it has been registered. *Lanham Act* §7(b), 15 U.S.C.A. §1057(b); *Lanham Act* § 33(a), 15 U.S.C.A. §1115(a). See *J. C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 144 U.S.P.Q. 435 (C.C.P.A. 1965) (registration on the Principal Register is prima facie proof of continual use of the mark, dating back to the filing date of the application for registration). *Accord Rolley, Inc. v. Younghusband*, 204 F.2d 209, 97 U.S.P.Q. 252 (9th Cir. 1953); *Chemetron Corp. v. Matsuo Electric Co.*, 153 U.S.P.Q. 372 (T.T.A.B. 1967). Defendant's assertion that the word "Kentucky" should not be considered when assessing its mark because all applicants for trademark registration must disclaim this word is another red herring, and has no merit. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983)(finding that "it is well settled that the disclaimed material still forms part of the mark and cannot be ignored in determining likelihood of confusion"); *Lone Star Steakhouse & Saloon v. Longhorn*

*Steaks, Inc.*, 106 F.3d 355, 362-63 (11th Cir. 1997)(same); *Universal Money Centers, Inc. v. American Telephone & Telegraph Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994).

As the Sixth Circuit has stated, the protection of property interests in trademarks, property interests which The Honorable Order has exerted time, effort and money in obtaining, is one of the most fundamental goals of trademark law. *Ameritech, supra,* 811 F.2d at 964.

II. DEFENDANT'S USE OF KENTUCKY COLONELS INFRINGES THE HONORABLE ORDER'S RIGHTS.

It is uncontested that The Honorable Order's mark was in use, and indeed registered, <u>before</u> Defendant began using the mark. Defendant nevertheless argues that it may apply KENTUCKY COLONELS, LOUISVILLE (with LOUISVILLE in miniscule type), and a design, to the exact same goods for which The Honorable Order owns the mark, because the marks are slightly different and because <u>Defendant's</u> use is merely "ancillary" or "ornamentation."

It is black letter law that words predominate over designs in determining likelihood of confusion. *See, e.g., Allstate Ins. Co. v. Delibro,* 6 U.S.P.Q. 1220 (T.T.A.B. 1988)(noting that "[t]here are numerous cases which state that, as between a design and a word mark, the word portion is dominant"); *In re Appetito Provisions Co., Inc.,* 3 U.S.P.Q.2d 1553 (T.T.A.B. 1967)(emphasizing that if a mark "comprises both a word and a design, then the word is normally accorded greater weight because it would be used by purchasers to request the goods or services"); *In re Pedro Ruiz-Tagle Decombe,* 1988 WL 252674 (T.T.A.B. 1988)(finding that "little weight should be afforded a relatively nondistinctive design in the face of two otherwise identical marks").

It is also clear that the addition of elements to a protected mark will not eliminate the likelihood of confusion. For example, in *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988), the court held that a likelihood of confusion existed where the only significant difference between the names used by the parties was the addition of the common geographic term "of Chicago," and the use of a different logo. The court rejected defendant's argument that the use of its house mark in conjunction with its name decreased possible confusion, stating that it was a "smoke screen and a poor excuse for the defendants' blatant misappropriation of the plaintiff's name" because consumers would necessarily believe that plaintiff had licensed, approved or otherwise authorized defendant's use of the mark. *Id. See also Appleseed Foundation Inc. v. Appleseed Institute, Inc.*, 981 F. Supp. 672, 678 (D.D.C. 1997)(upholding preliminary injunction even in light of defendant's subsequent addition of 'Johnny' to Appleseed mark because "[o]rganizations are frequently referred to by a single dominant word in their names, and. . . . this small cosmetic change is unlikely to prevent future confusion"); *Golden Door, Inc. v. Odisho*, 646 F.2d 347 (9th Cir. 1980)(holding defendant's attempt to distinguish his mark from plaintiff's GOLDEN DOOR trademark on the grounds he used the terms "Golden Door Coiffeur" and "Golden Door for Hair" was unpersuasive); *Kentucky Fried Chicken Corp. v. Smith*, 351 F.Supp. 1311 (E.D. Mich. 1972) (enjoining defendant from using "Al's Kentucky Fried Chicken" and "Al's Kentucky Style Fried Chicken" due to confusing similarity to KENTUCKY FRIED CHICKEN mark). The additions of LOUISVILLE (in tiny type) and the design are woefully inadequate to prevent confusion between The Honorable Order's KENTUCKY COLONELS brand merchandise and Defendant's identical goods embossed with

KENTUCKY COLONELS, which is clearly the dominant portion of Defendant's mark.[5] This is especially true where the additional material is merely descriptive, such as "Louisville."

Defendant's next red herring is the contention that because its main product is basketball, its use of the mark on goods is "ancillary," and therefore not an infringement of The Honorable Order's rights in the same mark for the same goods. Defendant has cited no authority for this novel proposition. That is because there is none. If Defendant was correct, any junior user could adopt a mark owned by a senior user in one class (say, clothing), for a class of goods unrelated to the senior user's goods (say, a basketball team), and then begin applying the mark to the exact goods used by the senior user (clothing), claiming that its use was "ancillary" to its main use (basketball). Here is an example: Let's take PRESTON & YORK, a house brand owned and federally registered by Dillard Department Stores for a variety of clothing, Reg. No. 2,004,543. Defendant's argument would allow it to name a basketball team PRESTON & YORK and then emblazon PRESTON & YORK on the same type of clothing which Dillard's sells under the mark, all the while contending there is no infringement because Defendant's use is "ancillary."

Defendant's assertion is frivolous on its face and completely unsupported. Defendant may have a right to stage basketball games under the name KENTUCKY COLONELS but it may not bootstrap that use into a field already occupied by The

---

[5] Although The Honorable Order has clearly established the likelihood of confusion in this case, it should be noted that any doubt as to the likelihood of confusion should be resolved against the newcomer, who has an affirmative duty to avoid confusion. *WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1086 n.1 (6th Cir. 1983); *P.T.C. Brands, Inc. v. Conwood Co.*, 887 F.Supp. 963, 973 (W.D. Ky. 1995)(same).

Honorable Order. There is <u>no law</u> to the contrary. If Defendant needs to sell merchandise with its team name, it should choose a new name---and not infringe on The Honorable Order's mark which was registered long before Defendant named its team.

### III. THERE IS A LIKELIHOOD OF CONFUSION AS TO SOURCE, AFFILIATION, CONNECTION OR SPONSORSHIP.

The confusion that is remedied by trademark and unfair competition law is confusion not only as to source, but also as to affiliation, connection or sponsorship. *McCarthy on Trademarks* §§23:8. Confusion either at the point of sale <u>or post-sale</u> results in a finding of infringement, as the Sixth Circuit squarely held in *Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1121-1122 (6th Cir. 1996). The general public who observe a KENTUCKY COLONELS shirt sold by Defendant, on the street or elsewhere away from the point of sale, may be confused regarding the affiliation between Defendant and The Honorable Order. *McCarthy, supra,* §23:5. The fact that the shirt was purchased at Defendant's website, Louisville Gardens (the venue for its games), or some other place with a connection to Defendant is meaningless in the likelihood of confusion analysis, because the confusion can occur anywhere the shirt is <u>worn</u>. That the point of sale of Defendant's merchandise is somehow significant is yet another red herring raised by Defendant. Confusion by The Honorable Order's customers must also be considered, in the form of The Honorable Order supporters who see Defendant's merchandise and believe it must be licensed by The Honorable Order. *Id.*

In *Champions*, the Sixth Circuit vacated a judgment of no infringement where the trial court had found a likelihood of confusion about <u>affiliation</u> between golf courses in Texas and Kentucky, both using the CHAMPIONS mark, but inexplicably

denied relief. The Sixth Circuit corrected the court below, squarely holding that confusion as to affiliation is actionable:

> The district court noted that despite their sophistication, golfers would likely be confused about whether the courses were affiliated, but appears not to have appreciated that <u>this</u> is the ultimate question to be answered in the likelihood of confusion inquiry.

*Id.* at 1121 (emphasis in original). The ultimate question here is whether there is a likelihood of confusion as to source, affiliation, connection <u>or</u> sponsorship between Defendant, when it sells goods bearing KENTUCKY COLONELS, and The Honorable Order, which sells identical goods under the identical mark.

The Court does not face this question in a vacuum. In this day of mass licensing of trademarks, numerous decisions deny junior users the right to use marks on goods even where the senior user does not use the mark on those goods, precisely because confusion as to affiliation is likely. As *McCarthy* states, "the public assumes that these uses are permitted only if licensed, which in turn means, that they will legally have to be licensed." *McCarthy on Trademarks* §24:9.1. Unlicensed uses, like Defendant's, result in confusion as to affiliation, the test for infringement under the Sixth Circuit's *Champion* case.

The Trademark Trial and Appeal Board has frequently denied registration of marks because the public will assume they are licensed by the owners of similar marks for <u>other</u> goods. *See, e.g., Bridgestone Tire Co. v. Bridgestone Trading Co.*, 221 U.S.P.Q. 1012 (T.T.A.B. 1984) (makers of BRIDGESTONE tires showed likelihood of confusion and successfully opposed registration of BRIDGESTONE for shoes, Board relying upon tire maker's promotional use of its mark on various items of promotional clothing distributed through its tire dealers; such use not only promoted tire sales, but

also identified opposer as the source of the apparel to recipients and purchases); *Harley-Davidson Motor Co., v. Pierce Foods Corp.,* 231 U.S.P.Q. 857 (T.T.A.B. 1986) (maker of HARLEY-DAVIDSON motorcycles (nicknamed HOGS) showed likelihood of confusion and successfully opposed registration of HARLEY-HOG for port, Board pointing to opposer's promotion use of its marks in serving food to motorcycle owners' club at their meetings); *Black & Decker Mfg. Co. v. Big Yank Corp.,* 231 U.S.P.Q. 484 (T.T.A.B. 1986) (maker of WORKMATE tools showed likelihood of confusion and successfully opposed registration of clothing under that mark, because the public would assume that opposer had in fact licensed clothing for promotional use, as have the owners of other well-known marks such as COCA-COLA, CHAMPION, FIRESTONE, DUNLOP and GOODYEAR).

The courts have also held that application of a senior user's trademark or service mark to clothing and other goods creates a likelihood of confusion as to affiliation. *International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc.,* 1995 WL 241875 (S.D.N.Y. 1995), *vacated in part on other grounds,* 80 F.3d 749 (2nd Cir. 1996) and 146 F.3d 66 (2nd Cir. 1998), *cert. denied,* 531 U.S. 873 (2000), is an illustrative case. The Association, a non-profit organization, used STAR CLASS for a class of boats and for races involving those boats. *Id.* at *2. The mark was not registered and the Association, unlike The Honorable Order, did not intend to become a commercial manufacturer or seller of clothes or apparel items. *Id.* Tommy Hilfiger began applying the words STAR CLASS to clothing. The use was enjoined, despite the fact that the label on the product said "Tommy Hilfiger," because "[t]he public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion

requirement." *Id.* at *10. *See also University of Georgia Athletic Association v. Laite*, 756 F.2d 1535 (11th Cir. 1985) (finding infringement in use of bulldog on beer can); *Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004 (5th Cir. 1975) (finding infringement in use of football emblems and specifically rejecting claim that the marks as applied to clothing serve no trademark purpose); *National Football League v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651 (W.D. Wash. 1982) (sale of NFL football jersey replicas enjoined). As a federal court in Delaware stated in enjoining a lottery game based on NFL games, "[a]pparently, in this day and age when professional sports teams franchise pennants, teeshirts, helmets, drinking glasses and a wide range of other products, a substantial number of people believe, if not told otherwise, that one cannot conduct an enterprise of this kind without NFL approval." *National Football League v. Governor of Delaware,* 435 F.Supp. 1372, 1381 (D. Del. 1977).

Each of these cases, and many others, found an actionable likelihood of confusion when a senior user's mark was used on goods for which the senior user <u>did not even claim</u> a prior use or a registration of the mark. We cite them only to demonstrate the overwhelming authority that putting a trademark on clothing will cause confusion as to affiliation with a previous user of the same mark. They squarely rebut Defendant's claim that its "ancillary" use is allowed.

This case is much easier, of course. The Honorable Order <u>sells</u> a line of merchandise under the brand KENTUCKY COLONELS, and owns a federal registration of the mark for those goods. The Defendant is placing The Honorable Order's mark on the <u>exact same</u> items as The Honorable Order---items specifically listed in The Honorable

Order's trademark registration. Defendant's contention in this case that there will be no confusion as to source, affiliation, connection or sponsorship is utterly without merit.

## CONCLUSION

Bouillabaisse may be tasty, but the concoction served up by Defendant is unpalatable. Defendant has sought to justify its use of The Honorable Order's federally registered trademark on goods directly competitive with those sold by The Honorable Order. For the reasons set forth above <u>and</u> in The Honorable Order's motion for temporary restraining order, Defendant's contention should be rejected and the preliminary injunction sought by The Honorable Order should be entered.

Respectfully submitted,

_____
William H. Hollander
Steven L. Snyder.
Roxanne Baus Edling
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, Kentucky  40202-2898
502.589.52358

Counsel for Honorable Order of Kentucky Colonels

13

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served upon the following, by mail, first class, postage prepaid, on this the **20** day of August, 2004:

Michelle Kaiser Bray
Stephanie Hale
Sommer Barnard Ackerson, PC
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023

Holland McTyeire
Amy Berge
Greenebaum Doll & McDonald PLLC
101 S. 5th Street, Suite 3500
Louisville, KY 40202-3197

_____
One of Counsel for Plaintiff

20228665.1

14